Okey, J.
I concur in the first proposition of the syllabus as to the rights of the parties under the quitclaim deed, for *240 the reason given in the opinion of Boynton, J., and for the further reason that the original certificates of entry are referred to in the quitclaim deed, so that the instrument may have effect by force of the recital.
But I dissent from so much of the opinion as holds that the delinquent sale is invalid. The statute required that the delinquent list should be published for four consecutive weeks between the first day of October and the first day of December. The notice itself is dated October 1st, which is evidence that it was not completed until that time, and the record shows that it was published for four consecutive weeks prior to December 1st. The argument is that the first publication may have been made on October 1st, and that there can be no presumption that tbe officer performed his duty by publishing it four weeks after October 1st, although there is nothing in the statute requiring the facts as to the publication to appear in the record. This is to require what is known in pleading as certainty to a certain intent in particular, according to which rule not only a statement of facts in the most precise form must be shown, but it must also appear that those facts are not to be controverted. Nothing of the sort is required at this day with respect to tax sales. In determining as to the validity of a sale of lands for taxes, the better opinion now is that where the record discloses a substantial compliance with the statute, this is all that is required, as to the mere form of the proceeding, and that to ascertain whether there was such compliance, the whole record should be examined.
Formerly, a tax purchaser was regarded as little better than a public robber. Hughey v. Horrel, 2 Ohio, 231. Strong, J., in a recent case in the Supreme Court of the United States (De Treville v. Smalls, 8 Law Reporter, 225), in disapproving that class of decisions, says: “Ve are not unmindful of the numerous decisions of state courts which have construed away the plain meaning of statutes providing for the collection of taxes, disregarding the spirit and often the letter of the enactments, until of late years *241 the astuteness of judicial refinement had rendered almost, inoperative all legislative provisions for the sale of lands, for taxes. The consequence was that bidders at tax sales,, if obtained at all, were mere speculators. The chances were greatly against their obtaining a title. The least error in the conduct of the sale, or in the proceedings preliminary thereto, was held to vitiate it, though the tax was clearly due and unpaid.” He further shows that in the later decisions, especially in Ohio, a more reasonable rule has been adopted.
Kellogg v. McLaughlin, 8 Ohio, 114, is relied on as sustaining the strict construction applied in the case before us. The change from the technical to the reasonable rule on this subject is very apparent, when we examine in our reports the early and later views of the eminent judge who delivered the opinion in that case. Still, I would feel bound by that decision, as it has become in a sense a rule of property, if the facts were entirely analogous to those in the case before us. But I think this case is distinguishable from it. There the record showed the publication for the proper length of time between the first of October and the first Monday of December; but the law required the publication to precede the first day of December, and the first Monday of December was not the first day of the month. Hence, the record disclosed the fact that. the officers conducting that sale were ignorant of the requirements of the law, and the court felt warranted in applying to that record a very strict construction. But nothing of the sort appears in this record, and a reasonable-construction of what does appear shows that the law was. complied with.
The other objection to the validity of the delinquent sale-will be found, on careful examination, to be equally technical and fallacious, and I will not take space to go into an examination of it.
Nor in my opinion is the objection to the forfeited sale-available to Magruder, if indeed the objection was at any *242 “time of any force. The action is brought by Magruder against Esmay to recover possession of two hundred and forty acres of land, and a necessary averment in the petition is that Esmay keeps him out of possession. Eighty .acres of the land had been sold and conveyed at a sale of forfeited lands more than twenty-one years before this suit was brought, and Esmay holds under that title. Magruder and those under whom he claims never had possession for a moment, nor did they in fact pay any taxes. The lands were wild and uncultivated, but Esmay and those under whom be claims regularly paid the taxes, openly made claim of exclusive and absolute ownership of the eighty acres of land under the deed made at the forfeited sale,, and that deed being regular on its face, afforded prima facie ■evidence of the regularity of the sale, and it had been properly recorded. Under the circumstances, the statute ■of limitations of twenty-one years was, in my opinion, a complete bar to the action as to the eighty acres. "With this view it is unnecessary that I should express any opinion upon the question whether there was any substantial 'defect in the forfeited sale.
Finally, I see no constitutional objection to the act of 1869 (66 Ohio L. 338; Revised Statutes, § 4114). The act •is as follows:
“ An act to improve the law of evidence concerning the titles of real estate.
“ Section 1. Be it enacted, etc., That in all cases where unoccupied or unimproved real estate has been or shall be ■sold at any tax sale in this state, and the purchaser thereof has received, or shall receive a deed therefor, and said real estate has been or shall, from and after said sale, be placed upon the tax duplicate of the proper county, in the name of said purchaser or those claiming title under him, and be .so continued on said duplicate, and said purchaser or those claiming under him, shall, from and after said sale, openly and notoriously claim the title and ownership of said real •estate and pay the taxes thereon from and after said sale, the same shall, as against any title acquired by deed exe *243 ■cuted after such tax sale, be held and deemed in all cases in all courts as prima facie proof of the possession of said real estate by said purchaser or those holding under said purchaser, from and after the date of said sale, until the said sale has been or shall be set aside in a civil action or suit, in a court of competent jurisdiction, or has been redeemed according to the laws of this state; and as to all persons acquiring title by deed executed after such tax sale, having knowledge of said sale and the payment of taxes and claim of title and ownership as aforesaid, said facts aforesaid shall be taken as conclusive proof of such possession, and be so held by all courts in all cases.
“ Sec. 2. This act shall be in force from and after its passage, and its provisions shall apply to all tax sales heretofore or hereafter made in this state.”
The act has no application to conveyances made before its passage. Even in England, where the power of parliament is unrestricted, the act would be so construed. Maxwell on Stats. 190. But to apply the act to tax sales already made is not to render it retroactive; nor does it in any unwarranted manner interfere with the rights of property. In my judgment the act is clearly valid, and on the facts it afforded a complete defense to Esmay. It simply prescribes a rule of evidence to apply, not to the original owner or his heir, but only to those who purchase from such owner subsequent to the passage of the act, such owner being out of possession, and the tax title outstanding; and where such purchaser takes the conveyance, with notice, under the circumstances disclosed in this record, it inures, in effect, to the benefit of the person holding the tax title. In that view, the act is simply a restraint on alienation not different in pidnciple from a statute which, in terms, provides that if one out of possession make a conveyance, it shall inure to the benefit of the party in possession; and the authorities relied on are not in opposition to the validity of such a statute. To be sure, it is said that no such purpose as I have stated appears *244 on the face of the statute; but White, J., in The State v. Atty. Gen., 21 Ohio St. 1, 11, very properly said “ The constitutionality of an act is to be determined by its operation, and not by the mere form it may be made to-assume.”
Gilmore, C. J., concurs in the dissenting opinion.